<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AHMAAD GRIFFIN, Administrator Ad Prosequendum of the Estate of GREGORY GRIFFIN, and AHMAAD GRIFFIN, Administrator of the Estate of GREGORY GRIFFIN,<br><br>*Plaintiffs,*<br>v.<br><br>THE CITY OF NEWARK, NEWARK POLICE DEPARTMENT, P.O. JOVANNY CRESPO, P.O. HECTOR ORTIZ, JOHN DOES 1-20 (names fictitious as currently unknown),<br><br>*Defendants.* | Civil Action No. 20-17290 (KSH) (CLW)<br><br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I.   Introduction**

This matter comes before the Court on plaintiff's motion to remand this case to state court (D.E. 5) and Magistrate Judge Cathy L. Waldor's report and recommendation that the Court grant the motion to remand (D.E. 10).  For the reasons set forth below, the report and recommendation will be adopted, and the motion to remand will be granted.

**II.   Background**

This action arises from a police chase in early 2019 that resulted in the death of the driver and injuries to the passenger.  (*See* D.E. 1-1, Compl.)  Plaintiff Ahmaad Griffin ("plaintiff"), on behalf of the estate of Gregory Griffin ("Griffin"), alleges that on January 28, 2019, at approximately 11:20 p.m., two Newark police officers, defendants Jovanny Crespo and Hector

Ortiz, engaged in a high-speed pursuit of a vehicle Griffin was driving as he fled from an attempted traffic stop. (*Id.* ¶ 6.) According to the complaint, as Ortiz drove the patrol car Crespo fired shots at Griffin's car on three separate occasions, striking both Griffin and his passenger, Andrew Dixon. (*Id.* ¶¶ 7-10.) Griffin and Dixon were brought to the hospital in critical condition, and Griffin died the next day. (*Id.* ¶¶ 12-13.) Crespo was later indicted for his role in the shooting. (*Id.* ¶ 17.)

On October 27, 2020, plaintiff filed a seven-count complaint in state court naming the City of Newark, the Newark Police Department,[1] Crespo, Ortiz, and 20 fictious defendants. Plaintiff asserts claims for assault and battery (count 1), negligence (count 2), wrongful death (count 3), excessive force (count 4), governmental responsibility (count 5), negligent hiring, training, and supervision (count 6), and *respondeat superior* liability (count 7).

Counts 4 and 5 were asserted under the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. § 10:6-1 *et seq.*, which provides, in pertinent part, as follows:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief. . . .

N.J.S.A. § 10:6-2(c). This statute is a "[s]tate analog" to 42 U.S.C. § 1983 intended to provide New Jersey citizens with a state law remedy for civil rights violations; it did not "create any new substantive rights." *Perez v. Zagami, LLC*, 218 N.J. 202, 212 (2014) (citations and internal quotation marks omitted) (also observing that the NJCRA "was intended to address potential gaps

---

[1] The notice of removal states that the "Newark Police Department" was improperly pleaded, without elaborating. (D.E. 1, Notice of Removal.)

2

in remedies available under New Jersey law but not cognizable under the federal civil rights law, Section 1983").

The City of Newark removed the action to this Court, invoking federal question jurisdiction on the assertion that plaintiff "has alleged claims . . . under the Constitution and Laws of the United States . . . as well as pendant state law claims. (D.E. 1, at 2 (Notice of Removal).) Plaintiff has moved to remand, arguing that subject matter jurisdiction is lacking because the complaint asserts no federal claims and the state claims do not require resolution of a substantial question of federal law; that is, that there is no embedded federal jurisdiction because the "substantiality" requirement for that type of jurisdiction is lacking. (D.E. 5-1, Moving Br.; *see also* D.E. 9, Reply Br.) Newark opposed, arguing that removal was proper based on embedded federal jurisdiction because, in short, "the resolution and clear establishment of federal constitutional rights is presumptively important to the federal system." (D.E. 6, Opp. Br. 1.)

On March 31, 2021, Magistrate Judge Waldor issued her report and recommendation, which concluded, in relevant part, that the substantiality requirement for embedded federal jurisdiction was not met. Newark has filed objections to the report and recommendations, arguing that the substantiality prong is satisfied. It also reveals for the first time that six weeks before the report and recommendation was issued, it was served with the complaint filed in a separate federal lawsuit brought by the estate of Dixon, Griffin's passenger, relative to the police chase;[2] Newark argues that this case should remain in federal court because it wants to consolidate the two cases.

### III. Standard of Review

In reviewing a magistrate judge's report and recommendation on a dispositive matter, of which remand decisions are one, *In re U.S. Healthcare*, 159 F.3d 142, 146 (3d Cir. 1998), the

---

[2] *Howard v. City of Newark et al.*, Civ. Action No. 21cv1289 (D.N.J.)

district court is called upon to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and may "accept, reject, or modify, in whole or in part, the findings or recommendations" of the magistrate judge. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3); L. Civ. R. 72.1(c)(2). *Accord EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (if party timely objects to report and recommendation, district court makes *de novo* determination of objected-to portions of report or specific proposed findings or recommendations).

## IV. Discussion

The central issue raised by plaintiff's motion to remand is whether the references in the complaint to alleged violations of Griffin's federal constitutional rights – references found in the two claims brought under the NJCRA, which provides a state law vehicle to vindicate federal and state constitutional and statutory civil rights – give rise to federal jurisdiction. This Court agrees with Magistrate Judge Waldor that, under the circumstances here, they do not.

A case may be removed to federal court only if it could have originally been filed in the district court. *MHA LLC v. Healthfirst, Inc.*, 629 F. App'x 409, 411 (3d Cir. 2015) (citing 28 U.S.C. § 1441(a)). The removing party "carries a heavy burden of showing that at all stages of the litigation the case is properly before the federal court," and removal statutes are "strictly construed, with all doubts to be resolved in favor of remand." *Brown v. JEVIC*, 575 F.3d 322, 326 (3d Cir. 2009).

Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action "aris[es] under" federal law when federal law creates the cause of action that the plaintiff has asserted. *Gunn v. Minton*, 568 U.S. 251, 257 (2013). But "even where a claim finds its origins in state rather than

federal law," there exists a "'special and small category'" of cases in which "arising under" jurisdiction nonetheless lies. *Id.* at 258 (quoting *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). This "embedded" federal jurisdiction over a state law claim requires that a federal issue be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313-14 (2005)).

Neither side argues that federal law created any of plaintiff's claims. Instead, the question is whether the NJCRA claims, which include references to federal constitutional rights, give rise to embedded federal jurisdiction, and specifically whether the substantiality requirement for such jurisdiction is met. (D.E. 11, Def.'s Obj. 1 ("[T]he City objects to only two opinions in the [report and recommendation], both relating to the substantiality of the federal issues embedded in the complaint.").[3]

The substantiality element examines "the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. The Supreme Court has made clear that "it is not enough that the federal issue be significant to the particular parties in the immediate suit." *Id.* As Judge Waldor properly concluded, that is precisely the problem here: although Newark would prefer to

---

[3] As Magistrate Judge Waldor observed in her report and recommendation, plaintiff argued in his opening brief that the substantiality requirement was not met, and only expanded his argument to other elements in reply, thus not properly placing them in issue. (D.E. 10, at 9-10.) But even absent this waiver, failure to meet the substantiality requirement necessitates remand and makes it unnecessary to address the other elements.

5

have a federal court adjudicate "the contours of [Griffin's] constitutional rights" (D.E. 6, Def.'s Opp. Br. 1-2), that question involves a fact-specific assessment of whether the alleged use of excessive force under the circumstances outlined in the complaint amounted to a violation of Griffin's constitutional rights.[4]  The answer, while of obvious significance to Griffin and defendants, does not carry the "importance . . . to the federal system as a whole" in the manner articulated by the Supreme Court in *Grable* and, more recently, in *Gunn*.

*Grable* involved a quiet title action filed in state court by the prior owner of property that had been sold by the IRS to satisfy the owner's federal tax delinquency. The prior owner argued that the IRS had not given it notice of the tax sale in a manner conforming with a federal tax statute. The entity that had bought the property at the tax sale removed the case to federal court, asserting that the title claim depended on interpretation of the federal tax statute. The jurisdictional question made its way to the Supreme Court, which held that the test for embedded federal jurisdiction was whether "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 545 U.S. at 314.

In finding that test met, the Court observed that "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court," given the government's "strong interest in the 'prompt and certain collection of delinquent taxes.'" *Id.* at 315 (citation omitted). Additionally, "the ability of the IRS to satisfy its claims from the property of delinquents requires clear terms of notice to allow buyers like [defendant] to satisfy themselves

---

[4] To the extent Newark also contends that count 5 is a federal claim, that count simply alleges that Newark is "responsible for the state and federal constitutional transgressions and violations of [the NJCRA]" that are alleged elsewhere in the complaint. (Compl. ¶ 12.) The only other count Newark asserts is subject to federal jurisdiction is count four, alleging excessive force.

that the Service has touched the bases necessary for good title. The Government thus has a direct interest in the availability of a federal forum to vindicate its own administrative action, and buyers (as well as tax delinquents) may find it valuable to come before judges used to federal tax matters." *Id.*

Eight years later, in 2013, *Gunn* considered whether a malpractice action challenging how the plaintiff's attorney handled an underlying patent infringement case "arose under" federal patent law pursuant to 28 U.S.C. § 1338(a).[5]  Concluding that it did not, and that therefore the case belonged in state court, the Supreme Court reiterated the *Grable* test and made clear that it encompasses four distinct requirements. Of particular note, *Gunn* emphasized that substantiality is a separate consideration from whether a federal issue is "necessarily raised," and that the former element "looks . . . to the importance of the issue to the federal system as a whole." 568 U.S. at 260 (also observing that it will "*always* be true" that the federal issue is "significant to the particular parties in the immediate suit" when the state law claim "'necessarily raises'" a disputed federal issue"). As an example of where an issue *was* substantial, the Court pointed out that in *Grable*, it had focused not on the interests of the litigants, but "on the broader significance of the notice question for the Federal Government." *Id.*  It also looked to an earlier case that involved determining the constitutional validity of a federal law: "the relevant point was not the importance of the question to the parties alone but rather the importance more generally of a determination that the Government 'securities were issued under an unconstitutional law, and hence of no validity.'" *Id.* at 261 (quoting *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 201 (1921)).

---

[5] The Supreme Court has "interpreted the phrase 'arising under' in both sections [§§ 1331 and 1338(a)] identically" and has applied its precedents thereunder "interchangeably." *Gunn*, 568 U.S. at 257.  Given this identity of interpretation, as well as the breadth of the Court's reasoning as discussed *infra*, Newark's argument that *Gunn* "had no precedential effect on subsequent cases because it was a legal malpractice matter" (Def.'s Obj. 6) is unpersuasive.

7

The patent law issues raised in the malpractice action giving rise to *Gunn* "carrie[d] no such significance," despite that a state court would be applying federal patent law to the facts of the case in adjudicating the malpractice claim, and despite the importance of the answer to the parties before it. *Id.* Even if that determination were to have preclusive effect "under some circumstances, the result would be limited to the parties and patents that had been before the state court," and "[s]uch 'fact-bound and situation specific' effects are not sufficient to establish federal arising under jurisdiction." *Id.* (quoting *Empire*, 547 U.S. at 701).

The scenario before this Court is far closer to *Gunn* than it is to *Grable*. As noted earlier, plaintiff has brought claims under the NJCRA that will involve the deciding court applying federal constitutional law to a specific constellation of facts. The "fact-bound and situation specific" result does not involve the validity of a constitutional or statutory provision; it does not otherwise have the broader effects that are a necessary predicate to the substantiality requirement for embedded jurisdiction. *See also MHA*, 629 F. App'x at 414 (*Grable* test not met where case involved applying federal law to disputed facts and did "not present the unusually strong federal interest required to qualify for the federal forum," such as calling into question the validity of a federal statute or a federal actor's conduct).

The closest Newark comes to articulating a potentially broader effect is its argument that each time a constitutional issue is resolved, the resulting decision "builds the body of clearly established law for purposes of determining entitlement to qualified immunity" and teaches officials how to govern their conduct in the future. (Def.'s Obj. 2.) Newark is correct that qualified immunity analysis looks to decisions that involved factually analogous scenarios. *See, e.g., Jefferson v. Lias*, __ F.4th __, 2021 WL 5934677, at *5 (3d Cir. Dec. 16, 2021). But Newark's apparent intention to raise a qualified immunity defense does not create federal

8

jurisdiction: "[a] defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986); *see also Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011) (burden of establishing qualified immunity falls to official claiming it as defense (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)). It is, rather, the allegations in "the well-pleaded complaint" that determine removability. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (under "the 'well-pleaded complaint rule,' . . . federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint"). *See also Maglioli v. Alliance HC Holdings LLC*, 16 F.4th 393, 413 (3d Cir. 2021) (federal preemption defense not "necessarily raised" by well-pleaded state law complaint, failing *Grable* test at first step).[6]

Newark further objects to the report and recommendation on the basis that Magistrate Judge Waldor declined, incorrectly in its view, to follow *Ortiz v. University of Medicine & Dentistry of New Jersey*, 2009 WL 737046 (D.N.J. Mar. 18, 2009) (Linares, J.), an unpublished decision involving, among other claims, one brought under the NJCRA that alleged violation of the U.S. Constitution. In declining to remand, the court concluded that the "actually disputed and substantial" elements of the *Grable* test were met because "[i]f federal tax statutes, which the United States government relies upon for its continued existence, satisfy the *Grable* test, then the

---

[6] To the extent Newark challenges a footnote in the report and recommendation suggesting that embedded jurisdiction is also lacking because plaintiff could conceivably recover on purely state law grounds (*i.e.*, a "wholly non-federal theory") (D.E. 10, at 13 n.5), this issue appears more appropriately relevant to the "necessarily raised" element of the *Grable* test. Newark's arguments about this footnote are also difficult to follow; for example, it invokes concerns about parallel litigation in state and federal court by citing case law discussing the declination of supplemental jurisdiction, construing remand statutes, and discretionary remand of declaratory judgment actions (*see* Def.'s Obj. 13-14), none of which is at issue here. In any event, the Court's conclusion that the "substantiality" element as outlined in *Gunn* is not satisfied makes it is unnecessary to decide whether this alternative reasoning in the footnote would warrant remand.

Constitution, upon which the United States' legal existence is predicated, surely suffices to satisfy the *Grable* test," and agreed with the report and recommendation it was acting upon that alleged constitutional violations are "by definition substantial." *Id.* at *3.  This reasoning predates *Gunn* and does not comport with the careful line-drawing that ruling calls for.  Magistrate Judge Waldor's report and recommendation properly declined to rely on *Ortiz*.

More broadly, both sides have cited various district court decisions that they assert support their respective positions.  Newark points to cases that it contends follow *Ortiz* (many of which grant, rather than deny, remand and/or predate *Gunn*), while plaintiff cites decisions pointing in the other direction.  Review of these cases makes clear that the appropriate course is the one the Court, consistent with Judge Waldor, takes here:  to examine the specific pleading and the specific claims made in the case, analyze the issues at stake, and determine whether each element of the four-part *Grable* test (including substantiality) is met.  Following that path has led other courts to reach the same result the Court does here.  *See, e.g.*, *Pena v. Town of Kearny*, 2014 WL 1666052, at *1, 2 (D.N.J. Apr. 25, 2014) (Chesler, J.) (complaint that alleged claims under NJCRA "for damages caused by [defendants'] subjection of [plaintiff] to the deprivation of rights and privileged [sic] secured by the Constitution of the United States" could not support embedded jurisdiction because "whether [p]laintiffs can vindicate federal constitutional rights under the [NJ]CRA is a heavily fact dependent inquiry that, while 'significant to the particular parties in the immediate suit' . . . is of little importance to the operation of the federal system itself" (citation omitted); *Torres v. City of Trenton*, 2020 WL 2767316, at *2 (D.N.J. May 27, 2020) (Shipp, J.) (following *Pena*).

Newark's objections to the report and recommendation also rely heavily on the existence of Dixon's separate federal lawsuit and concerns of administrative difficulties and "judicial

10

economy" if this action is remanded while Dixon's remains in federal court.  Succinctly, Newark's desire for administrative simplicity does not give this Court license to ignore the fundamental requisites of federal jurisdiction or to adjudicate a case where that jurisdiction is lacking.  As plaintiff puts it, the existence of common questions relevant for purposes of a consolidation motion "cannot create federal jurisdiction where i[t] does not otherwise exist." (D.E. 14, at 2.)

**V.      Conclusion**

Plaintiff's motion to remand will be granted, and the report and recommendation will be adopted.  An appropriate order will issue.

Date: December 20, 2021

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.